[Cite as *Gehlmann v. Gehlmann*, 2014-Ohio-4990.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

JAMES C. GEHLMANN and FRANCES
M. GEHLMANN (Susan L. Funk,
Guardian)

       Appellant

   v.

JAMES C. GEHLMANN, et al.

       Appellees

C.A. No.      13CA0015-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2011-03-CA-00010

DECISION AND JOURNAL ENTRY

Dated: November 10, 2014

---

HENSAL, Judge.

**{¶1}** Appellant, Susan L. Funk, in her capacity as guardian of James C. Gehlmann and Frances M. Gehlmann, appeals a judgment of the Medina County Court of Common Pleas Probate Division. For the following reasons, this Court affirms.

I.

**{¶2}** Mr. and Mrs. Gehlmann owned real estate located at 905 Seasons Pass Drive in Brunswick Hills Township. In 2005, the Gehlmanns granted a mortgage on the property to BAC Home Loans Servicing, LP ("BAC"). Ms. Funk was appointed guardian of the person and estate of both Mr. and Mrs. Gehlmann in 2011. Approximately one month after her appointment as guardian, Ms. Funk filed a complaint seeking the court's authority to sell the property as the "maintenance and upkeep of [the] * * * property [had] become a burden upon the [Gehlmanns']

estate[.]" BAC answered and pleaded its mortgage lien in the amount of $177,928.94.[1] The court ordered the property sold at a private sale in the amount of $177,900. The net proceeds available for distribution after the payment of the closing costs were $159,558.40. Ms. Funk filed a motion under Revised Code Section 2127.38 to distribute the net proceeds of the sale. Therein, she sought to pay her law firm $20,000 for fees, which was discounted from the total billed amount of $24,677.50, prior to satisfaction of BAC's lien. The requested fees included payment for services rendered in providing care to the Gehlmanns in Ms. Funk's capacity as their guardian. The fees also included preparation of paperwork and attendance at hearings in the guardianship cases, conversations and correspondence with creditors other than BAC, and meetings with Mr. and Mrs. Gehlmann and others concerning their future living arrangements. Under Ms. Funk's motion, BAC would receive $138,928.15 in satisfaction of its lien.

{¶3} BAC opposed Ms. Funk's motion on the basis that only the attorney's fees associated with the sale of the property should be entitled to priority over its lien. It advocated that the court should reduce the attorney's fee portion to $3,700 which, by its calculations, was incurred in connection with the land sale. Ms. Funk argued that BAC's assertion was founded on an overly narrow construction of Revised Code Section 2127.38 that restricted the court's ability to determine the appropriate amount of fees within the unique confines of a guardianship case. No formal request for fiduciary fees was filed by Ms. Funk in the land sale proceeding. The court's magistrate issued a decision that approved Ms. Funk's requested attorney's fees in the

---

[1] We note that Bank of America is the named defendant in the complaint. The parties and the trial court reference Bank of America and BAC Home Loans Servicing, LP at various points throughout the case. At the point in the proceedings where there is a brief in opposition filed to the guardian's motion to distribute, it is filed by Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP. The order of distribution lists only Bank of America, N.A.

amount of $20,000 after reviewing the itemized bill and deducting several charges that the magistrate found were not related to the land sale proceeding.

{¶4} BAC filed an objection to the magistrate's decision and Ms. Funk filed a response to BAC's objection. After a non-oral hearing, the court sustained BAC's objection and ordered that $3,700 in attorney's fees were rendered in connection with the land sale and were entitled to priority of payment before BAC's lien. Ms. Funk appealed and raises two assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE JUDGMENT ENTRY DATED FEBRUARY 26, 2013[,] SUSTAINING DEFENDANT'S OBJECTION AND REDUCING ATTORNEY FEES IN A LAND SALE PROCEEDING MUST BE REVERSED BECAUSE IT IS BASED ON AN IMPROPER ANALYSIS OF THE RELEVANT STATUTE, TO WIT: R.C. 2127.38.

{¶5} Ms. Funk argues in her first assignment of error that the trial court incorrectly applied Revised Code Section 2127.38 in sustaining BAC's objection to the magistrate's decision. We disagree.

{¶6} BAC maintains that this Court should review the trial court's judgment under an abuse of discretion standard since it was reviewing a magistrate's decision. We note that, "[a]lthough the trial court has discretion when finding facts and applying those facts to the law," the central issue in Ms. Funk's appeal concerns the trial court's interpretation and application of a statute. *Swedlow v. Riegler*, 9th Dist. Summit No. 26710, 2013-Ohio-5562, ¶ 7, quoting *Foster v. Foster*, 9th Dist. Wayne No. 09CA0058, 2010-Ohio-4655, ¶ 6. Accordingly, this Court reviews such judgments de novo. *See In re. Piesciuk*, 9th Dist. Summit No. 26274, 2012-Ohio-2481, ¶ 6. "A de novo review requires an independent review of the trial court's decision

without any deference to the trial court's determination." *Id.*, quoting *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

{¶7} Proceedings initiated by a guardian to sell land are governed by Chapter 2127 of the Ohio Revised Code. Section 2127.38 sets forth the manner in which the proceeds from a land sale should be distributed. It provides that:

> The sale price of real property sold following an action by a[ ] * * * guardian shall be applied and distributed as follows:
>
> (A) To discharge the costs and expenses of the sale, including **reasonable fees to be fixed by the probate court for services performed by attorneys for the fiduciary in connection with the sale, and compensation, if any, to the fiduciary for services in connection with the sale as the court may fix**, which costs, expenses, fees, and compensation shall be paid prior to any liens upon the real property sold and notwithstanding the purchase of the real property by a lien holder;
>
> (B) To the payment of taxes, interest, penalties, and assessments then due against the real property, and to the payment of mortgages and judgments against the ward * * * according to their respective priorities of lien, so far as they operated as a lien on the * * * estate of the ward at the time of the sale, that shall be apportioned and determined by the court * * * [.]

(Emphasis added.)

{¶8} "[W]hen construing a statute, we first must look to the plain language of its provisions." *Morgan v. Community Health Partners*, 9th Dist. Lorain No. 12CA010242, 2013-Ohio-2259, ¶ 33, citing *Hewitt v. L.E. Myers*, 134 Ohio St.3d 199, 2012-Ohio-5317, ¶ 16. Accordingly, we must read words and phrases in context and according to grammatical rules and common usage. *Id.*, quoting *Hewitt* at ¶ 16. If the statute's meaning is clear and unambiguous, we apply the statute "as written." *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, ¶ 20, quoting *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 9. "[S]tatutes 'may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word,

phrase, sentence and part of an act.'" *Id*. at ¶ 21, quoting *Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, ¶ 13.

{¶9} Although both parties argue that the statute is not ambiguous, they disagree on the meaning of the phrase "in connection with the sale." Ms. Funk maintains that this phrase requires that the court determine the reasonableness of the requested attorney's fees on a case-by-case basis taking into account the unique circumstances of guardianship cases wherein the wards are residing in the subject real estate and contesting their placement in alternate living arrangements. BAC contends that the trial court correctly interpreted the phrase to limit the priority of attorney's fees to only those that are attendant to the land sale case rather than those incurred while performing the general duties of a guardian in caring for the wards and their estates.

{¶10} In the present case, Ms. Funk submitted a motion to distribute the net proceeds of the sale under Section 2127.38. One of the "[c]osts of [a]dministration" listed in the motion was $20,000 in "attorney['s] fees" dating back to November 19, 2010, which is when Ms. Funk initiated emergency legal proceedings to be declared the guardian of both Mr. and Mrs. Gehlmann. We note that the land sale complaint was not filed until March 24, 2011. Ms. Funk moved to have these fees paid under Section 2127.38(A) prior to payment of BAC's lien under Section 2127.38(B). The result of such a distribution was that BAC would receive only a portion of the balance due on its mortgage.

{¶11} In its judgment sustaining BAC's objection to the magistrate's decision, the trial court found that the magistrate erroneously interpreted Section 2127.38 to allow the cost of legal work completed both in the guardianship cases and the land sale case to be paid prior to the

mortgage. It found that "[t]he plain language of the statute indicates that only legal and fiduciary services connected with the land sale receive priority over taxes and liens."

{¶12} Applying the principals of statutory construction to the attorney's fees awarded in the present case, we must first look to the plain language of the contested phrase, "in connection with the sale." A "connection" is defined as "the state of being connected or linked" and a "relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement)." *Webster's Third New International Dictionary* 481 (1993). Thus, we conclude that the plain language of Section 2127.38 indicates that attorney's fees incurred "in connection with the sale" are fees that are linked to or dependent on the land sale proceedings.

{¶13} We also note that the plain language of the statute vests the trial court with the authority to "fix" what it determines are reasonable attorney's fees. R.C. 2127.38(A). This would mean that in "fixing" the fee, the trial court would have discretion and, therefore, any review of that determination would employ the abuse of discretion standard. The Ohio Supreme Court has noted that the probate court's authority to determine attorney's fees is solely within its jurisdiction. *See In re Murnan's Estate*, 151 Ohio St. 529, 531 (1949).

{¶14} In reviewing the magistrate's decision, the trial court cited to the case of *Aranda v. Tammac Holdings Corp.*, 184 Ohio App.3d 11, 2009-Ohio-4781 (2d Dist.) in support of its finding that only legal and fiduciary services connected to the land sale are entitled to priority of payment under Section 2127.38(A). In *Aranda*, the executor of an estate filed a land sale complaint to sell real estate in order pay the decedent's debts, which included a mortgage owed to the defendant. The executor sought to pay the attorney's and executor's fees associated with the estate proceedings from the net proceeds of the land sale prior to payment of the mortgage. The executor's motion for distribution of the net proceeds separately itemized the attorney's and

executor's fees in the estate proceeding from the attorney's fees associated with the land sale. The Second District concluded that the trial court erred in granting payment of the estate fees prior to payment of the mortgage as they were not earned in connection with the sale of the real estate. *Id*. at ¶ 24. The Court also found that it could not determine which executor's fees were associated with the sale based upon the record before it and, therefore, remanded the case for a determination by the trial court. *Id*. at ¶ 22.

**{¶15}** We note that *Aranda* did not involve a statutory construction analysis of the phrase "in connection with the sale." There are also factual differences between this case and *Aranda* which involved an executor's rather than a guardian's land sale. Finally, unlike the executor in *Aranda*, Ms. Funk did not separately itemize her attorney's and guardian's fees.

**{¶16}** Nevertheless, the trial court's reliance on *Aranda* was well-suited and this Court concludes that it did not err in its construction of Revised Code Section 2127.38(A) in finding that "only legal and fiduciary services connected with the land sale receive priority over taxes and liens." This is a correct recitation of the applicable statute. Accordingly, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE JUDGMENT ENTRY DATED FEBRUARY 26, 2013[,] OVERRULING THE MAGISTRATE'S FINDINGS RELATED TO [THE] ALLOWANCE OF ATTORNEY FEES MUST BE REVERSED BECAUSE IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶17}** Ms. Funk argues in her second assignment of error that the trial court's judgment was against the manifest weight of the evidence. She reiterates her same argument in the first assignment of error that the trial court's misapplication of Section 2127.38(A) resulted in an overly narrow interpretation of how much of her requested fees were entitled to priority over BAC's mortgage. Ms. Funk further maintains that the trial court should have held an oral

hearing prior to issuing its decision and that it is unclear from the judgment what evidence it relied on in making its decision.

{¶18} While Ms. Funk's assignment of error is couched in terms of challenging the manifest weight of the evidence, the substance of her argument suggests that the trial court lacked any evidence from which it could conclude that only $3,700 of the requested attorney's fees were entitled to priority before BAC's mortgage. As such, this Court will analyze her argument using the sufficiency standard. *See Swedlow*, 2013-Ohio-5562, at ¶ 29.

{¶19} The Ohio Supreme Court has explained that "[t]he sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, paragraph two of the syllabus. "[S]ufficiency" has been defined as

> "a term of art meaning that legal standard which is applied to determine * * * whether the evidence is legally sufficient to support the [judgment] as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Id*. at ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶20} Section 2127.38(A) permits the probate court to grant both attorney's and guardian's fees rendered in connection with the land sale. While Ms. Funk listed the requested expenditure as an "[a]ttorney['s] [f]ee" and described the "[a]ttached itemized billing statement for attorney['s] fees," it is clear from our review of the record that the substance of the billing statement included both attorney's and guardian's fees. The majority of the itemized legal services included on the statement attached to the motion to distribute were performed by Ms. Funk. In addition to being the Gehlmanns' guardian, she is also a licensed attorney.

{¶21} The magistrate's decision specifically found that "this Court allows both attorney['s] fees and guardian's compensation" and discussed the various factors supporting an

award of "attorney['s] fees" that included services more akin to guardian's fees. In ruling on Ms. Funk's motion to distribute the net proceeds of the sale, the magistrate found that the land sale proceedings and the Gehlmanns' guardianship cases were connected for several reasons. First, under the court's local rules, the land sale complaint could not be filed until the guardianship cases were filed. *See* Med Prob L R 78.1(II)(A). Second, the magistrate noted that "[r]elated * * * guardianship files are always considered by the [c]ourt whenever a hearing is heard and decided in a civil [land sale] action." Third, the court allows both legal and guardian's fees for attorneys who also serve as guardians. *See* Med Prob L R 71.2. Finally, the magistrate noted that the Gehlmanns' guardianship cases originated from a need to appoint a guardian to manage their finances after allegations were made that they were not paying their bills, received utility disconnection notices and had insufficient assets to pay their debt. These findings by the magistrate were upheld by the trial court. Absent from the record is a designation of what the fiduciary fees in connection with the sale would be, separate and apart from the attorney's fees.[2] There was no request made upon the trial court for the separate "fixing" of fiduciary fees.

**{¶22}** Ms. Funk's request, contained within her motion to distribute, is labeled solely as attorney's fees, even though, clearly, she sought fiduciary fees. The magistrate, in granting the motion to distribute, approved attorney's fees because that is how the motion is worded, but it also clearly awarded fiduciary fees, which the magistrate thought were permissible as being "in connection with the sale." R.C. 2127.38(A). Further, BAC objected to attorney's fees but also engaged in the argument regarding guardian's fees as it was responsive to the magistrate's

---

[2] Further absent from the record is any indication that "Bank of America," who was named in the complaint or "Bank of America, NA," who was listed in the amended entry for distribution of the sale's net proceeds, is a party to this land sale proceeding. In fact, BAC Home Loan Servicing, LP filed an answer noting that it was "improperly named in [the] Complaint as 'Bank of America'" and that Bank of America erroneously received leave to plead, but never asked to be made a party to the proceeding.

decision. Finally, the trial court found merit in BAC's objections and determined that Ms. Funk was entitled to attorney's fees in the amount of $3,700. It further stated that the magistrate had dispensed with all "non-legal services" by denying those fees in its decision. The trial court's entry states:

> IT IS ORDERED that the objection to magistrate's decision is sustained as to the amount of attorney fees to be paid under R.C. 2127.38(A). Upon independent review and consideration, the balance of the magistrate's decision contains no error of law or fact and is adopted by the Court.

> IT IS FURTHER ORDERED that reasonable attorney fees for services performed in connection of the sale of the real estate shall be fixed at $3,700.

(Emphasis deleted.) The court then orders, pursuant to the motion, distribution of the proceeds from the sale. Therein it awards Ms. Funk $3,700 in attorney's fees associated with the sale. The trial court next entered an amended judgment entry to distribute the net proceeds of the sale. This entry allowed for attorney's fees in the amount of $3,700 and gave priority for these fees over BAC's lien.

{¶23} We previously addressed Ms. Funk's assertion that the trial court misapplied the statute in her first assignment of error and determined that it did not err. Regarding her argument that it is unclear how the trial court decided on the $3,700 in attorney's fees that were entitled to priority before BAC's mortgage, the court concluded that, other than the magistrate's erroneous interpretation of the statute, "the balance of the magistrate's decision contains no error of law or fact." The court further stated that it undertook an independent review of the objection and found that the reasonable attorney's fees rendered in connection with the sale totaled $3,700. In opposition to Ms. Funk's motion to distribute, BAC detailed the legal fees, which amounted to $3,700, that it argued were connected to the land sale proceedings. Regarding Ms. Funk's argument that the trial court should have set the matter for a hearing rather than deciding the

objection on the record alone, we note that neither she nor BAC requested a hearing even though the local rules allow for such a request to be made. *See* Med Prob L R 78.11.

**{¶24}** After a careful review of the evidence, this Court concludes that there was sufficient evidence to support the trial court's judgment. Ms. Funk's second assignment is overruled.

### III.

**{¶25}** Ms. Funk's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

MOORE, J.
CONCURS.

CARR, J.
DISSENTING.

**{¶26}** I respectfully dissent.

**{¶27}** I agree with the majority that the trial court's interpretation and application of a statute is reviewed de novo. *State Farm Mut. Automobile Ins. Co. v. Jiles*, 9th Dist. Summit No. 26841, 2014-Ohio-2512, ¶ 21. I further agree that statutory construction begins with a consideration of the plain language of the provisions, which, if clear and unambiguous, must simply be applied as written. *In re K.E.M.*, 9th Dist. Summit No. 26307, 2012-Ohio-5652, ¶ 11. However, if a statute is ambiguous, the court must construe it, giving effect to the legislature's intent. *Family Medicine Found., Inc. v. Bright*, 96 Ohio St.3d 183, 2002-Ohio-4034, ¶ 9. The court may determine the intent of the legislature by considering such factors as the objective of the statute; the circumstances under which the statute was enacted; the legislative history; common law or former versions of the statute, including laws pertaining to the same or similar subjects; the consequences associated with a particular construction of the statute; and the administrative construction of the statute. R.C. 1.49. "'A statute is ambiguous when its language is subject to more than one reasonable interpretation.'" *Lang v. Dir., Ohio Dept. of Job*

*& Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 14, quoting *Clark v. Scarpelli*, 91 Ohio St.3d 271, 274 (2001).

{¶28} While both parties argue that the statute is not ambiguous, they disagree as to the meaning of a phrase critical to determining for which services the fiduciary may receive priority compensation. Specifically, they propose significantly different meanings for the phrase "in connection with the sale." It is hard to imagine how, under these circumstances, the statute cannot be considered ambiguous. I would conclude that the phrase "in connection with the sale" is subject to more than one reasonable interpretation and is, therefore, ambiguous. Moreover, I would conclude that the trial court too narrowly construed the phrase.

{¶29} I agree with the majority that inherent in the plain meaning of the statute is the legislature's imbuing of discretion upon the trial court in determining fees and compensation for services performed. The trial court may "fix" those amounts as it deems reasonable and in consideration of services performed "in connection with the sale" of the property. In this case, the trial court construed the statute too narrowly and concluded that it had no discretion to award more expansive fees, i.e., anything beyond fees necessary with regard to the preparation of paperwork related to the sale of the property.

{¶30} The legislature clearly indicated its intent to compensate the attorney for the fiduciary and the fiduciary herself for services performed in connection with the sale of real property prior to all others, even prior to paying taxes and assessments against the property. Reasonably, any creditor who received payment would do so solely as a result of the efforts of the fiduciary and/or her attorney. Priority compensation under those circumstances is just. In this same vein, by using a broad phrase like "in connection with the sale," the legislature recognized that the sale of a decedent's or ward's real property necessarily implicates more than

mere preparation and execution of documents immediately related to the sale to effect a just compensation. For example, expenses to create a guardianship imposed out of necessity in the interest of preserving a ward's assets would reasonably be attributed in connection with the sale of real property. But for the existence of a guardian, an incompetent's real property could not be sold. In such a case, the filing of the application for a guardianship would lay the necessary groundwork for managing assets, including selling real property.

{¶31} By construing the phrase "in connection with the sale" too narrowly and determining that it had no discretion to award fees or compensation beyond the scope of documentation immediately related to the sale transaction, the trial court ignored the intent of the legislature to justly compensate attorneys and fiduciaries for services associated with the sale. Accordingly, I would reverse and remand the matter to the trial court to determine which services by the attorney/guardian were associated with the sale, i.e., which services laid the necessary groundwork for the sale. Only then could the trial court fix an amount in its discretion to reasonably compensate the attorney for fees and the guardian for services rendered in connection with the sale of the real property.

APPEARANCES:

S. FORREST THOMPSON, Attorney at Law, for Appellant.

JAMES S. WERTHEIM and MELANY K. FONTANAZZA, Attorneys at Law, for Appellee.